IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAELANGELO CORRIAS,           )
                                 )
            Plaintiff,           )
                                 )
      v.                         )      1:05CV1111
                                 )
UNUMPROVIDENT CORP., et. al.     )
                                 )
            Defendant.           )

## MEMORANDUM OPINION AND ORDER

**Eliason, Magistrate Judge**

On November 21, 2005, Plaintiff Michaelangelo Corrias filed this action in Guilford County Superior Court alleging that Defendant UnumProvident Corporation ("UnumProvident") wrongfully terminated his long-term disability ("LTD") benefits. Defendant removed the case to this Court on the ground that the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq., ("ERISA") preempted Plaintiff's state law contractual and extracontractual claims. In their Joint Rule 26(f) Report, the parties agreed to treat Plaintiff's breach of contract claim as a claim for benefits under 29 U.S.C. § 1132(a) and dismiss the remaining allegations. The Court approved this report by order on March 20, 2006.

The Joint Report also addresses the fourth defense in UnumProvident's Answer, which asserts that the suit should be dismissed for Plaintiff's failure to exhaust administrative remedies. Specifically, the report provides that Defendant address

this defense by separate motion, which it did and is now before the Court. Defendant also moves to strike Plaintiff's affidavit, filed in response to Defendant's summary judgment motion, for being untimely.

**Facts**

On April 9, 2001, World Airways hired Plaintiff as an airline flight tester and engineer. As an employee of World Airways, Plaintiff applied, and was approved, for disability insurance coverage under the company's group disability plan ("the Plan"). The Plan provided benefits through Unum Life Insurance Company, a subsidiary of Defendant UnumProvident.

In November 2001, Plaintiff began experiencing chest pains, shortness of breath, and other symptoms consistent with a heart attack. Shortly thereafter, he was diagnosed with coronary spasms and began "an aggressive treatment program designed to return him to his position" with World Airways. He also applied for LTD benefits under the Plan at this time and received payments beginning in May 2002. These payments continued until May 2004, when they were terminated by Defendant. In a letter dated April 29, 2004, Defendant advised Plaintiff that he did not qualify as disabled according to the applicable definition after 24 months of LTD benefits.

In addition, Defendant's seven-page letter explains, in detail, how to appeal a claims decision. It provides, in pertinent part: "[I]f you disagree with our determination and want to appeal this claim decision, you must submit a written appeal. This appeal

must be received by us within 180 days of the date you receive this letter." The address for submitting a written appeal and any supporting documents is clearly set forth below this paragraph and is followed by extensive details of the appeals process. These details include the following: (1) the initial disability determination will be afforded no deference; (2) the review will be conducted by a different person than the person who made the initial determination; (3) Plaintiff will have an opportunity to submit supporting documents and review Defendant's documents as provided by U.S. Department of Labor regulations; and (4) the review will take all new information into account. Further, the letter sets out the information Defendant used in making its initial determination of non-disability and advises that Plaintiff may submit additional information for review within 180 days. This section also indicates that submission of additional information alone does not constitute a written appeal.

Plaintiff does not contend that he submitted a written appeal to Defendant at any time. Instead, he claims in his affidavit that he "repeatedly forwarded medical information to the Defendant for its review," and that Defendant's failure to respond to this information excused him from submitting a formal appeal. Defendant, in turn, claims that Plaintiff's failure to follow its required appeals process precludes him from proceeding with the lawsuit now before the Court.

**Discussion**

While ERISA does not expressly require exhaustion of administrative remedies, the Fourth Circuit has held that "[t]he pursuit and exhaustion of internal Plan remedies is an essential prerequisite to judicial review of an ERISA claim for denial of benefits." Gayle v. United Parcel Serv., 401 F.3d 222, 230 (4th Cir. 2005)(citing Makar v. Health Care Corp. of the Mid-Atlantic, 872 F.2d 80, 82 (4th Cir. 1989)). Internal claims procedures "minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement." Makar, 872 F.2d at 83. In addition:

> [b]y preventing premature interference with an employee benefit plan's remedial provisions, the exhaustion requirement enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions, and assemble a factual record which will assist a court in reviewing the fiduciaries' actions. Indeed, subsequent court action may be unnecessary in many cases because the plan's own procedures will resolve many claims.

Id. (citations omitted).

In light of the strong rationale for exhaustion, courts may suspend this requirement only where a plaintiff makes a "clear and positive" showing that pursuit of administrative remedies would be futile. Id. "The futility exception . . . is quite restricted, and has been applied only when resort to administrative remedies is 'clearly useless.'" Kern v. Verizon Commc'n, Inc., 381 F. Supp. 2d 532, 537 (N.D. W. Va. 2005)(quoting Commc'n Workers of America v. AT&T, 40 F.3d 426, 433 (D.C. Cir. 1994)). For example, the

plaintiff in O'Bryhim v. Reliance Standard Life Ins. Co., 997 F. Supp. 728, 731 (E.D. Va. 1998), demonstrated futility by showing that the defendant insurance company failed to respond to three prior appeals.[1]  The plaintiff also showed that if he were to appeal on remand, the same individuals would again consider his claim.  Id.  Similarly, the court held in Nessell v. Crown Life Ins. Co., 92 F. Supp. 2d 523, 529 (E.D. Va. 2000), that any further attempt to appeal would be futile where defendant (1) refused to turn over requested copies of plan documents and medical reports and (2) told plaintiff that its decision was "final and irrevocable."

In contrast, the plaintiff in the present case has not presented "clear and positive" evidence that an administrative appeal would be useless.  See note 1, supra.  He has admittedly failed to file *any* appeal, and the applicable appeal procedures provide for both access to relevant documents and review by a different person than the person who made his initial eligibility determination.  In fact, the procedures even provide that the initial determination will be given no deference in the appeal

---

[1] Plaintiff's futility argument relies heavily on Savoie v. Blue Cross Blue Shield of Alabama, 2005 U.S. Dist. LEXIS 102 (E.D. La. 2005).  As an unpublished decision from another jurisdiction, this case is not controlling.  In addition, and more importantly, it lends nothing to Plaintiff's argument.  In Savoie, the appeal procedure was unclear.  Nevertheless, the plaintiff submitted a number of written appeals, so labeled, and the administrator accepted and acted on the submissions.  The court refused to allow the administrator to later claim the proper procedure was not followed when it actively and passively misled and confused the plaintiff.  The opposite is true in the instant case.  The submissions in Savoie clearly far exceeded Plaintiff's act of simply forwarding "medical information."  Notably, Defendant's letter specifically informs that submission of additional medical information does *not* constitute an appeal.

-5-

process. These circumstances, which Defendant clearly set forth in its April 29, 2004 letter, give every indication that an appeal submitted by Plaintiff would have been given fair consideration. Defendant's only limiting stipulation, which Plaintiff failed to meet, was that such an appeal be submitted within 180 days of the letter's receipt.

In an effort to bolster his futility argument, Plaintiff mistakenly relies on his own affidavit, in which he claims, "I repeatedly forwarded medical information to the Defendant for its review. In light of his [sic] policies, an administrative review would have been a pointless exercise." Defendant contends in its motion to strike that this affidavit was untimely filed. However, the Court need not reach the issue of timing. The affidavit should be stricken both because Defendant's motion to strike it is unopposed, see Local Rule 7.3(k), and because the affidavit offers a conclusory statement, see Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 962 (1996)(stating that opinions without corroboration are not significantly probative and may be stricken). In any event, this affidavit only serves to hurt Plaintiff because it shows that he forwarded medical information, not a written appeal as required by the Plan's terms.

In sum, Plaintiff has clearly failed to exhaust administrative remedies as required by ERISA and has not shown that an attempt to do so would have been futile. Because exhaustion is a preliminary procedural requirement in this case, summary judgment is appropriate, and the Court need not reach Plaintiff's bad faith and

estoppel arguments. Contrary to Plaintiff's assertions, the latter arguments have nothing to do with exhaustion of Defendant's appeals process, which is the only matter at issue here.

Even if the Court did consider Plaintiff's additional arguments in deciding the motion at hand, the Court's decision would remain unchanged. First, Plaintiff claims that Defendant "acted in bad faith by unreasonably denying [his][] claims," or, more specifically, that "Defendant provided no evidence or reasonable explanation disproving his eligibility." Unfortunately for Plaintiff, the record demonstrates otherwise. Defendant's termination of benefits letter includes a point-by-point list of the medical data considered in determining his disability status, including the dates of treatment, treating physicians, and diagnoses. It then sets out an equally detailed description of the company's analysis of these factors and its conclusions based on this analysis in light of the LTD plan terms. Finally, beneath the heading, "WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM," the letter provides: "Your proof of claim, provided at your expense, must show that you are under the regular care of a doctor." It goes on to define "regular care" and inform Plaintiff that he must show such care for his psychological conditions in order to continue receiving LTD benefits.[2] In short, since Defendant

---

[2]While Plaintiff initially received disability payments due to coronary vasospasm and currently suffers from various heart and gastroesophageal complaints, his medical evaluations also indicate that he suffers from major depression and generalized anxiety disorder. Defendant contends that ongoing treatment of these psychological conditions, particularly the anxiety, is likely
(continued...)

-7-

provided ample evidence and explanation for its eligibility decision, that decision cannot be characterized as one made in bad faith. Further, Defendant's letter tells Plaintiff exactly what to argue on appeal and what evidence he will need to support a successful appeal. Plaintiff simply failed to follow through on this advice.

Plaintiff's additional arguments are equally unpersuasive. Plaintiff argues that he "relied to his detriment on the words and actions of high-ranking company employees" who told him he was eligible for long term disability benefits. (Pl.'s Br. 3.) However, prior to reaching the issue of eligibility, the Court must determine whether Plaintiff exhausted his administrative remedies. Whether or not Plaintiff was eligible for benefits is not relevant to the issue of exhaustion.

Lack of relevance also plagues the final section of Plaintiff's brief, in which he states that the Georgia Insurance Commission fined Defendant UnumProvident in 2003 for improperly denying claims. Plaintiff presents no evidence tying this event to his own claim or to ERISA claims generally. Even if such a link existed, evidence of earlier fines would be inadmissible in the current proceeding, which only concerns the denial of Plaintiff's LTD benefits, and his failure to exhaust administrative remedies. This information, like Plaintiff's earlier offerings, fails to support a claim of futility.

---

[2](...continued)
to alleviate Plaintiff's physical symptoms.

Because Plaintiff failed to exhaust administrative remedies as required by ERISA or demonstrate that an attempt to do so would have been futile, summary judgment for Defendant is appropriate in this case.

**IT IS THEREFORE ORDERED** that Defendant's first motion for summary judgment (docket no. 16) is granted and that this action is dismissed.

**IT IS FURTHER ORDERED** that Defendant's motion to strike Plaintiff's affidavit (docket no. 22) is granted.

/s/ Russell A. Eliason
**United States Magistrate Judge**

January 16, 2007